Arielle Stephenson (SBN 336434)
MITCHELL SANDLER LLC
1120 20th St, NW, Suite 725
Washington, DC 20036
Telephone: 202-886-5260
astephenson@mitchellsandler.com

Attorneys for Plaintiff
*Insta Mortgage f/k/a Arcus Lending, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DIVISION

| | |
|---|---|
| INSTA MORTGAGE f/k/a ARCUS LENDING, INC. | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MICHELLE LOZOYA and AHL FUNDING d/b/a AMERICAN HOME LOANS, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff InstaMortgage f/k/a Arcus Lending, Inc. ("InstaMortgage"), by and through its

undersigned counsel, hereby files this Complaint, seeking monetary damages and such other

relief as the Court deems appropriate, against Defendant Michelle Lozoya ("Lozoya") and

Defendant AHL Funding d/b/a American Home Loans ("AHL Funding") collectively

Defendants, and in support therefore avers as follows:

**THE PARTIES**

1.   Plaintiff InstaMortgage is a California corporation with its principal place of business at 1245 S. Winchester Blvd, Suite 209, San Jose, CA 95128.

2.   Defendant Lozoya is an adult individual who currently resides at 11784 Nyack Road, Victorville, CA 92392.

3.   Defendant AHL Funding is a California corporation with the principal place of business at 15360 Barranca Parkway, Irvine, CA 92618.

**JURISDICTION AND VENUE**

4.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because this action involves a Federal Question based upon violations of the laws of the United States for which this Court has original jurisdiction.

5.   This Court has personal jurisdiction over AHL Funding because it is headquartered in California and conducts a major part of its operations with regular and continuous business activity in California.

6.   This Court has personal jurisdiction over Lozoya because she is a resident of California.

7.   The claims of Plaintiff and the Defendants arise out of Lozoya's and AHL Funding's business activity in California and, at all times herein mentioned, Lozoya was performing services pursuant to a contract entered into and performed in California.

8.   Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in this District, and Defendants are subject to jurisdiction in this District. Venue is also proper under Business & Professions Code §17203.

## DIVISION ASSIGNMENT

9.     Pursuant to Civil Local Rule 3-2(c) and (e) and 3-5(b), assignment of this action to the San Jose Division would be appropriate given its nexus to Santa Clara County.

## FACTUAL ALLEGATIONS

### A. InstaMortgage

10.     InstaMortgage was founded in 2008 and operates as a provider of real estate financing solutions, offering its customers a variety of mortgage products. InstaMortgage is currently licensed to provide mortgage lending services to clients in twenty-five states.

11.     InstaMortgage expends a significant amount of time and resources to develop its brand and market itself to potential borrowers. It has taken InstaMortgage-years to build up its strong reputation which InstaMortgage uses to generate revenue.

12.     As a mortgage lender, InstaMortgage obtains and stores substantial amounts of nonpublic, sensitive customer information, including but not limited to names, address, employment information, social security numbers, salary information, credit information, credit card and bank account numbers, assets, liabilities, loan approval, loan status and loan denial, credit scores, account balances and other financial information (collectively "Confidential Information"), for the purposes of providing mortgage lending services to its customers.

13.     To ensure the protection of InstaMortgage's confidential and proprietary information, InstaMortgage took several steps to maintain the privacy of their data and information. For instance, InstaMortgage's system is password protected and in order for employees to access the system, a Technical Administrator of InstaMortgage's IT Department had to provide permission.

14.     InstaMortgage's system also had user level permissions, which also required access by a Technical Administrator of InstaMortgage's IT Department. Finally, InstaMortgage used two-factor authentication, which provided a second layer of protection to their system.

**B. Michelle Lozoya's Employment with InstaMortgage**

15.     Lozoya began her employment with InstaMortgage on or about December 31, 2020.

16.     During her employment with InstaMortgage, Lozoya served as a Loan Originator.

17.     As a material term and as consideration for employment with InstaMortgage, Lozoya executed an employment agreement (the "Lozoya Agreement"). *See* M. Lozoya Agreement, attached hereto as Exhibit A.

18.     In relevant part, the Lozoya Agreement specified that during her employment with InstaMortgage, Lozoya was required to "originate mortgage loans on behalf of [InstaMortgage's] borrowers." *See* Exhibit A at §2.01.

19.     The Lozoya Agreement further provided that Lozoya:

> shall not engage in or provide similar or related services for other persons, firms, companies, or corporations, or engage in any other business in any other business activity that would interfere with the performance of Loan Officer's duties, without the prior written consent of [InstaMortgage].

*See* Exhibit A at §2.04.

20.     The Lozoya Agreement also prohibited the following conduct:

> Loan Originator further agrees that for a period of one (1) year after the termination of this Agreement that he/she shall not solicit [InstaMortgage's] prospective or existing clients or customers based upon [InstaMortgage] generated or supplied leads obtained during the term of this Agreement, nor will he/she solicit any client or customer with existing contractual obligations to [InstaMortgage].

*See* Exhibit A at §8.03.

21.     Lozoya also agreed to be bound by the following provision on confidentiality:

> Loan Originator acknowledges that [InstaMortgage] owns proprietary Confidential Information which constitutes a valuable, special and unique asset or [InstaMortgage], and is in the nature of a trade secret. This Confidential Information has been compiled and developed by [InstaMortgage], and its affiliated businesses, over time at considerable expense and effort, has not been divulged to third parties, and is not known

to [InstaMortgage's] competitors, who could have obtained economic value from such information had it been known. As used herein, the term "Confidential Information" includes all information and materials belonging to, used by, or in the possession of [InstaMortgage] and its affiliated businesses relating to their products, processes, services, technologies, inventions, patents, ideas, contracts, forms, records, data, financial information, business strategies, pricing, marketing plans, and customer lists, but shall not include (a) information that was already within the public domain at the time the information was acquired by Loan Originator, or (b) information that subsequently becomes public through no act or omission of Loan Originator. Loan Originator agrees that all Confidential Information is and shall continue to be the exclusive property of [InstaMortgage], whether or not prepared in whole or in part by Loan Originator and whether or not disclosed to or entrusted to Loan Originator's custody. Except as [InstaMortgage] may otherwise consent to in writing, Loan Originator will not, directly or indirectly, use, other than for the benefit of [InstaMortgage], publish, or otherwise disclose, either in writing, orally or in electronic form, at any time to anyone, any of [InstaMortgage's] Information, whether or not conceived, originated, discovered, or developed in whole or in part by Loan Originator. Loan Originator's obligation to preserve the secrecy of Confidential Information shall survive the termination of this Agreement and/or his/her employment with [InstaMortgage]. Upon termination of Loan Originator's employment, Loan Originator agrees to return to [InstaMortgage] all files, papers, and materials of any and every kind, regardless of form, which contain or relate to Confidential Information.

*See* Exhibit A at §8.02.

22.    Further, as an employee of InstaMortgage, Lozoya was given a copy of the InstaMortgage Employee Handbook (the "Employee Handbook") and "agree[d] to follow the guidelines within it." *See* Michelle Lozoya Employee Handbook Acknowledgment, attached hereto as Exhibit B.

23.    In relevant part, the Employee Handbook provided:

Employees may not disclose any confidential information or trade secrets to anyone outside the Company without the appropriate authorization. Confidential information may include internal reports, financials, client lists, methods of production, or other internal business-related communications. Trade secrets may include information regarding the development of systems, processes, products, design, instrument, formulas and technology. Confidential information may only be disclosed or discussed with those who need the information.

Employees must maintain the confidentiality of Company trade secrets and confidential information. Trade secrets include, but are not limited to,

> information regarding the development of systems, products, and technology. Private and confidential information includes, but is not limited to, customer lists, financial data, and private personal information about other employees or clients that they have not given the employee permission to share.

*See* Exhibit B at p. 50 and p. 53.

24.     Beyond these agreements with InstaMortgage, Lozoya owed a fiduciary duty of loyalty to act in InstaMortgage's best interests, which included maintaining the confidentiality of its proprietary information and customer data, and to avoid diverting any corporate opportunities away from InstaMortgage.

25.     Furthermore, under lending laws, including but not limited to the Secure and Faire Enforcement for Mortgage Licensing Act (the "SAFE Act") a loan officer must identify the specific lender they work for and may not work for two companies simultaneously in the same licensed jurisdiction.  Lending laws and regulations promulgated by the Department of Housing and Urban Development, further prohibit originators from simultaneously working for two lenders at once and prohibit improper conflicts of interest.  These federal requirements are critical to protect and provide transparency to consumers in connection with obtaining a residential mortgage.

26.     While employed as a Loan Originator at InstaMortgage, Lozoya diverted over thirty (30) loans to AHL Funding. The loans at issue involved current and/or prospective InstaMortgage customers who had already begun the process of obtaining financing with InstaMortgage and who had provided substantial non-public information to Lozoya, as a licensed agent of InstaMortgage, for the sole purpose of arranging financing through InstaMortgage. Prior to diverting the loans to AHL Funding, Lozoya produced on average 6.2 loans a month.

27.     Lozoya diverted borrowers who applied and/or inquired about a mortgage through InstaMortgage by taking non-public information provided to InstaMortgage by

borrowers, and without their consent or that of InstaMortgage, supplying it by email to employees of AHL Funding, namely Denise De La Cruz, who could then prepare loan estimates, applications and process loans for borrowers using information supplied to InstaMortgage for the purpose of obtaining a loan through InstaMortgage.

28.    In doing so, Lozoya often sent the borrowers confidential, non-public, personal information, including social security numbers, employment verification documents, license information and financial documents, provided to InstaMortgage for the purpose of obtaining financing. The disclosure of this information violated Lozoya's contractual and legal obligations to InstaMortgage and also amounts to violations of the Gramm Leach Bliley Act, which prohibits the transfer of customer data without a customer's consent, particularly where the transfer is accomplished through unsecure means.

29.    This information was used to facilitate pricing, applying for, processing and ultimately closing these loans at AHL Funding.

30.    Despite being publicly employed with InstaMortgage, Lozoya was working to close loans on behalf of AHL Funding, a direct competitor with InstaMortgage, which ultimately created customer confusion in a manner that was harmful to InstaMortgage and detrimental to its reputation.

31.    Moreover, in doing so, Lozoya has violated the Secure and Fair Enforcement of Mortgage Licensing Act which (1) provides that each loan originator must conspicuously disclose the licensed entity for whom they work and (2) that a loan officer may not simultaneously work for two different licensed entities simultaneously. The purpose of these loans is to prevent borrower confusion and improve transparency to ensure that a borrower know exactly which entity is responsible for arranging or providing the financing for their home as well as the identity of the entity being supplied their private nonpublic information. The

transparency is critical so borrowers can hold the appropriate persons accountable in the event of any improper or unlawful activities.

32.    Here it is apparent borrowers were not made aware of the diversion of their loans and/or disclosure of their confidential information to AHL Funding. Indeed, on or about February 4, 2022, a consumer filed a complaint with the Consumer Financial Protection Bureau against InstaMortgage based on Defendant Lozoya's actions.

33.    Upon learning of the complaint, InstaMortgage investigated the circumstances alleged in the complaint. InstaMortgage discovered that the consumer was not one that attempted to close on a property with InstaMortgage and instead sought to close on a property with AHL Funding through Lozoya.

34.    Thus, the consumer was confused as to the proper entity against which to file the complaint because despite her employment with InstaMortgage, Lozoya was working on AHL Funding's behalf and surreptitiously diverted the borrower and disclosed the borrower's information to AHL Funding.

35.    Upon learning of Lozoya's wrongful conduct, on February 7, 2022, InstaMortgage terminated Lozoya's employment with InstaMortgage.

36.    Approximately four (4) days later, on February 11, 2022, Lozoya began *officially* working at AHL Funding.

37.    Upon information and belief, while employed by InstaMortgage and advertising herself as licensed exclusively with InstaMortgage Lozoya solicited current and potential InstaMortgage customers to discontinue doing business with InstaMortgage and instead conduct business with AHL Funding.

38.    At all times relevant to this action, AHL Funding knew by virtue of Lozoya's licensing status contained within the National Mortgage Licensing System ("NMLS") that Lozoya, acting in concert with AHL Funding employees, was engaging in conduct that violated

the terms of her employment with InstaMortgage and in violation of federal lending and privacy laws. In fact, in order to lawfully close loans referred by Lozoya, AHL Funding was required to have her license transferred to AHL Funding.

39.    In other words, AHL Funding knew it could not employ Lozoya as a loan officer without having her license transfer from InstaMortgage to AHL Funding. However, Defendant AHL Funding never undertook this required step, and simply allowed Lozoya to use her employment with InstaMortgage to lure in customers and divert them to AHL, without such customers' knowledge or consent.

40.    In fact, on March 2, 2022, counsel for InstaMortgage sent correspondence to AHL Funding formally advising AHL Funding of the wrongful conduct. The correspondence detailed Lozoya's, wrongful acts, including but not limited to: Lozoya misappropriating InstaMortgage's confidential and proprietary trade secret information by sending this material to AHL Funding employees for the use and benefit of AHL Funding and conspiring with AHL Funding employees, including Denise De La Cruz, Loan Originator, to divert over thirty (30) loans from InstaMortgage to AHL Funding.

41.    The March 2, 2022, communication effectively put AHL Funding on direct notice of Lozoya's unlawful acts, the wrongful acts of AHL Funding employees, and ongoing solicitation to divert InstaMortgage's business to AHL Funding. To date, AHL Funding has not responded to this correspondence.

42.    The unlawful conduct detailed above has damaged InstaMortgage, causing the loss of current and potential customers and, generally, lost profits due to lost business and potential business.

43.    As a result of the above actions InstaMortgage has suffered and continues to suffer irreparable injury and damages.

## FIRST CAUSE OF ACTION
### Violations of California Penal Code §502
### (Against All Defendants)

44.     InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

45.     InstaMortgage brings this claim for violation of California Penal Code §502 which provides, in part:

(c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services.

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

(6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

(8) Knowingly introduces any computer contaminant into any computer, computer system, or computer network.

(9) Knowingly and without permission uses the Internet domain name of another individual, corporation, or entity in connection with the sending of one or more electronic mail messages, and thereby damages or causes damage to a computer, computer system, or computer network.

46.     During the tenure of her employment with InstaMortgage, Lozoya individually and in concert with AHL Funding, knowingly accessed InstaMortgage's databases and data in violation of her employment agreement and, thus, without permission, in violation of California Penal Code §502 (c)(1)(a)(b), (c)(2), (c)(3) (c)(6) and (c)(7).

47.     In addition to the foregoing, Lozoya has individually and in concert with AHL Funding, without permission, taken and copied, or assisted in taking and copying data from InstaMortgage's computer systems, and has used this data to divert confidential information to AHL Funding, in violation of California Penal Code §502 (c)(1)(a)(b), (c)(2), (c)(3) (c)(6) and (c)(7).

48.     Furthermore, Lozoya, individually and in concert with AHL Funding, knowingly used, or caused to be used, InstaMortgage's computer services in violation of her employment and agreement and, thus, without permission, in violation of California Penal Code §502 (c)(1)(a)(b), (c)(2), (c)(3) (c)(6) and (c)(7).

49.     California Penal Code §502 allows for a private right of action. Specifically, California Penal Code §502 provides, in part:

(e) (1) In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access. For the purposes of actions authorized by this subdivision, the conduct of an unemancipated minor shall be imputed to the parent or legal guardian having control or custody of the minor, pursuant to the provisions of Section 1714.1 of the Civil Code.

(2) In any action brought pursuant to this subdivision the court may award reasonable attorney's fees…

(4) In any action brought pursuant to this subdivision for a willful violation of the provisions of subdivision (c), where it is proved by clear and convincing evidence that a defendant has been guilty of oppression, fraud, or malice as defined in subdivision (c) of Section 3294 of the Civil Code, the court may additionally award punitive or exemplary damages.

50.     The unlawful conduct set forth above continues to injure InstaMortgage and cause damages in fact and the loss of money. Further, in doing the foregoing acts, Defendants, and each of them acted maliciously, fraudulently, and willfully and in complete disregard of the rights of InstaMortgage. The nature of the ill-will, malice, and reckless disregard of the rights of InstaMortgage by which the Defendants and each of them intentionally acted to deprive InstaMortgage was such a despicable manner so as to justify an award of punitive and/or exemplary damages pursuant to California Civil Code §3294.

51.     Defendants' acts and practices described herein offend established public policies and involve business practices that are unlawful. As a result, InstaMortgage is entitled to injunctive relief and other equitable relief to restrain Defendants' conduct.

## SECOND CAUSE OF ACTION
### Misappropriation of Trade Secrets in Secrets in Violation of California's Uniform Trade Secrets Act
### (Against All Defendants)

52.     InstaMortgage incorporates all previous paragraph as if fully set forth herein.

53.     Upon careful review of InstaMortgage's systems, during the approximately one (1) year period that Lozoya was employed at InstaMortgage as a Loan Originator, she sent over thirty (30) loans, as well as all the customer information entrusted to AHL Funding, which constitutes trade secrets as described above and as defined by California's Uniform Trade Secrets Act.

54.     To divert the loans to AHL Funding, Lozoya worked with Denise De la Cruz, an AHL Funding Loan Originator and accessed InstaMortgage's borrower information, customer lists, loan data, loan applications and pricing information, which constitutes trade secrets as defined by California's Uniform Trade Secrets Act.

55.     In addition, the InstaMortgage Confidential Information as to its borrowers, includes non-public, personal information, including social security numbers, employment verification documents, license information and financial documents, that also constitutes trade secrets as defined by California's Uniform Trade Secrets Act.

56.     InstaMortgage keeps the trade secret information alleged in this Complaint confidential and has undertaken reasonable efforts to maintain the secrecy of the trade secrets at issue, as discussed above. See, ¶¶ 13-14

57.     InstaMortgage's trade secret information described herein derives independent economic value from not being generally known to the public or others who could obtain economic value from their disclosure or use such as competitors like AHL Funding. Such

confidential information constitutes trade secrets within the meaning of California Civil Code Section 3426.1.

58.     AHL Funding misappropriated InstaMortgage's trade secret information at least by acquiring such information improperly through Lozoya in violation of her individual duties of confidentiality to InstaMortgage and in breach of her Employment Agreement and upon information and belief, other agreements with InstaMortgage.

59.     Defendants knew or should have known under the circumstances that the information misappropriated was trade secret information.

60.     Defendants' misconduct detailed herein constitutes misappropriation of InstaMortgage's trade secrets and violations Sections 3426 *et seq.* of the California Civil Code. As a direct and proximate result of Defendants' conduct, InstaMortgage has been damaged in amount to be proven at trial.

61.     InstaMortgage has also incurred, and will continue to incur, additional damages, costs, and expenses, including attorneys' fees, as a result of Defendants' misappropriation. As a further proximate result of the misappropriation and use of InstaMortgage's trade secrets, Defendants were unjustly enriched.

62.     Pursuant to Section 3426.2 of the California Civil Code, InstaMortgage is entitled to an injunction to prohibit Defendants from using, disclosing and/or otherwise benefiting from InstaMortgage's trade secrets; to eliminate any commercial advantage that Defendants may otherwise derive from their misappropriation; and to require Defendants to immediately return to InstaMortgage all confidential information, documents, and any other misappropriated materials.

63.     Pursuant to Section 3426.3 of the California Civil Code, InstaMortgage is entitled to recover its damages incurred by virtue of Defendants' wrongful misuse of their trade secrets, in addition to disgorgement of all amounts by which Defendants have been unjustly enriched or the payment of a reasonable royalty, in an amount to be proven at trial.

64.     In performing the conduct described herein, Defendants acted willfully and maliciously, intending to injure InstaMortgage and to wrongfully obtain an advantage at InstaMortgage's expense. Pursuant to Section 3426.3 of the California Civil Code, InstaMortgage is entitled to all remedies available under the law to compensate InstaMortgage, including but not limited to, an award of exemplary damages against Defendants.

65.     Pursuant to Section 3426.4 of the California Civil Code, InstaMortgage is also entitled to an award of its attorneys' fees and costs incurred in this action.

### THIRD CAUSE OF ACTION
### Misappropriation of Trade Secrets in Secrets in Violation of the Defend Trade Secrets Act 18 U.S.C.A. § 1836
### (Against All Defendants)

66.     InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

67.     The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), defines a trade secret as, inter alia, "all forms and types of financial, business, scientific, technical, economic, or engineering information, . . . whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" – provided that the owner took "reasonable measures to keep such information secret," and it offers the holder of the trade secret an advantage over competitors who do not know or use the trade secret.

68.     InstaMortgage's proprietary information includes, among other things, its pricing information, lead lists and leads, nonpublic borrower financial and personal information, prospective and current customer information, loan application and communications with clients constitute trade secrets under the DTSA.

69.     InstaMortgage derives economic value from the Confidential Information, including its borrower information, customer lists, loan data, loan applications and pricing

information. Therefore, maintaining the secrecy of the Confidential Information is critical to the success of InstaMortgage's business.

70.     The Confidential Information is protected and not generally known to the public or to InstaMortgage's competitors. Further, the Confidential Information relating to current and potential borrowers' is protected from disclosure to third parties by various state and federal laws prohibiting such disclosure.

71.     InstaMortgage has consistently and diligently undertaken all reasonable steps to protect the Confidential Information, as detailed above, including, among other things, requiring employees to sign an Employment Agreement, which contain confidentiality clauses.

72.     In connection with her employment with InstaMortgage, Lozoya is licensed by the State of California and is charged with knowledge regarding the confidential nature of the Confidential Information.

73.     Lozoya was entrusted with access to InstaMortgage's Confidential Information, as set forth above.

74.     InstaMortgage's trade secrets are related to products or services used in interstate commerce.

75.     Defendants willfully and maliciously (or in the alternative in bad faith) used and misappropriated InstaMortgage's trade secrets without the knowledge or consent of InstaMortgage.

76.     Specifically, Defendant Lozoya sent Confidential Information to Defendant AHL Funding for the use and benefit of Defendant AHL Funding.

77.     Defendant AHL Funding was aware of and facilitated Defendant Lozoya in taking and using InstaMortgage's trade secrets.

78.     Defendant AHL Funding further permitted the use of InstaMortgage's trade secrets for its own benefits.

79.     Defendants utilized InstaMortgage's trade secrets without InstaMortgage's express or implied consent, all to InstaMortgage's detriment.

80.     As a direct of Defendants' actions, InstaMortgage was harmed and continues to be harmed.

81.     As a direct and proximate result of Defendants' actions, InstaMortgage has suffered injuries and damages in excess of the jurisdictional limit of this Court, in an amount to be ascertained at trial, in accordance with U.S.C. §1836(b)(3)(B).

82.     Defendants have been unjustly enriched as a result of their misappropriation of InstaMortgage's trade secrets. InstaMortgage therefore seeks recovery for this unjust enrichment in accordance with U.S.C. §1836(b)(3)(B).

83.     To the extent InstaMortgage's actual damages and Defendants' unjust enrichment are not reasonably ascertainable or subject to proof, InstaMortgage is entitled to a reasonable royalty for the use of such trade secrets in accordance with U.S.C. §1836(b)(3)(B).

84.     Defendants' misappropriation and/or misuse of InstaMortgage's trade secrets was and is willful and malicious and entitles InstaMortgage to an award of exemplary damages pursuant to U.S.C. §1836(b)(3)(C)

85.     As a further direct and proximate result of Defendants' willful and malicious misappropriation, InstaMortgage is entitled to an award of attorneys' fees and costs based on Defendants' bad faith, willful and/or malicious conduct pursuant to U.S.C. §1836(b)(3)(D).

## **FOURTH CAUSE OF ACTION**
### **Conversion**
### **(Against All Defendants)**

86.     InstaMortgage incorporates all previous paragraphs as is fully set forth herein.

87.     InstaMortgage has an advantage over its competitors because of its confidential and proprietary Confidential Information.

88.     Lozoya was entrusted with InstaMortgage's Confidential Information, including the private information of InstaMortgage's borrowers, and entrusted with its customers, potential customers and business opportunities in connection with her employment with InstaMortgage.

89.     Lozoya wrongfully conspired with Defendant AHL Funding to unlawfully convert, Confidential Information, potential clients, actual clients, and business opportunities, by improperly and surreptitiously diverting its business and information to AHL Funding, with the intention to permanently depriving InstaMortgage of its property and to use such for Defendants' own gain.

90.     As a result of Defendants' wrongful conduct, InstaMortgage has suffered, and continues to suffer, economic loss and other general and specific damages, including, but not limited to damage to business reputation, lost profits, lost revenue, and lost business opportunities.

91.     Defendants committed the wrongful conduct maliciously, oppressively and with the intend to defraud and permanently deprive InstaMortgage of its property.

92.     Therefore, InstaMortgage is entitled to punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment and Constructive Trust**
**Cal. Civ. Code § 2223, et seq**
**(Against All Defendants)**

93.     InstaMortgage incorporates all previous paragraphs as is fully set forth herein.

94.     InstaMortgage has a right to its trade secrets and Confidential Information, to the exclusion of others.

95.     Beginning at an exact date unknown to InstaMortgage but at least since 2021, Lozoya and AHL Funding have misappropriated InstaMortgage's trade secret information and its actual and potential customers and knowingly and improperly used that information to their advantage and to the detriment of InstaMortgage in violation of the California Uniform Trade Secrets Act.

96.     The trade secrets and customers and business revenues the Defendants have misappropriated are the rightful property of InstaMortgage. The Defendants wrongfully acquired and continued to use and hold InstaMortgage's property to the detriment of InstaMortgage.

97.     By wrongfully acquiring and continuing to use and hold InstaMortgage's property to the detriment of InstaMortgage, Defendants have been unjustly enriched thereby.

98.     California Labor Code Section 2860 provides that: "Everything which an employee acquires by virtue of his employment, except the compensation, which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

99.     Under California law, "one who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code §2223.

100.    The California Civil Code also states that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ. Code §2224.

101.    Based on the acts and practices described in this Complaint, InstaMortgage seeks the imposition of a constructive trust over InstaMortgage's trade secrets, and diverted business revenues, and any benefit Defendants have gained or derived through the misappropriation and use of InstaMortgage's trade secrets and business revenues. Based on the acts and acts and practices described in this Complaint, this Court should impose a constructive trust over Defendants' profits, as they have been derived through Defendants' misappropriation of InstaMortgage's property.

### SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty and the Duty of Loyalty**
**(Against Defendant Lozoya)**

102.    InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

103.   Lozoya owed InstaMortgage certain fiduciary duties, including the duties of loyalty, good faith, fair dealing and to act in InstaMortgage's best interest and avoid acting in a manner detrimental to InstaMortgage's financial, business, and other interests.

104.   Lozoya also owed various statutory duties to InstaMortgage, including but not limited, to those statutory duties set forth in California Labor Code Sections 2851, 2853, 2854, 2856, 2857, 2858, 2859, 2861, 2862, 2863, and 2865.

105.   Lozoya breached her fiduciary duties, statutory duties, as well as her duties of loyalty to InstaMortgage by secretly diverting InstaMortgage's borrowers to AHL Funding, misappropriating InstaMortgage's Confidential Information, and by converting and disclosing confidential borrower information to solicit, either directly or indirectly, InstaMortgage's borrowers away from InstaMortgage and towards AHL Funding, one of InstaMortgage's competitors.

106.   In acting in the manner described herein, Lozoya did not exercise the care required in her position, in that she used her position of trust and confidence to further her own interests, and in doing so cause injury to InstaMortgage.

107.   As a result of Lozoya's wrongful conduct, InstaMortgage has been irreparably harmed. Specifically, InstaMortgage has suffered and continues to suffer economic loss, and other general and specific damages, including, but not limited to, damage to business reputation, lost revenue, and lost business opportunities.

### SEVENTH CAUSE OF ACTION
**Aiding and Abetting Defendant Lozoya's Breach of Fiduciary Duty**
**(Against Defendant AHL Funding)**

108.   InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

109.   InstaMortgage brings a claim against AHL Funding for aiding and abetting Lozoya in her breach of fiduciary duty. The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2)

defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." See CACI No. 3610; *American Master Lease LLC v. Idanta Partners, Ltd* (2014) 225 Cal.App.4th 1451, 1478.

110.    AHL Funding aided and abetted Lozoya's breach of fiduciary duty by accepting InstaMortgage's confidential and proprietary trade secret information and by accepting and assisting in the diversion of InstaMortgage's customers for the use and benefit of AHL Funding.

111.    Lozoya also conspired with AHL Funding employees, including Denise De La Cruz, Loan Originator, to divert over thirty (30) loans from InstaMortgage to AHL Funding. Upon information and belief, and prior to InstaMortgage counsel's correspondence dated March 2, 2022, AHL Funding had knowledge of these activities as Lozoya is an employee of Defendant AHL Funding. See, Paragraphs ¶¶ 40-41.

112.    As a direct and proximate result of the breach of fiduciary duty InstaMortgage has been damaged in the sum of at least $357,500.00 in gross revenue, lost profits, and consequential damages in an amount according to proof.

113.    In doing the acts alleged herein, AHL Funding acted with oppression, fraud, malice and in conscious disregard of InstaMortgage's rights, and InstaMortgage is therefore entitled to punitive damages in an amount according to proof at trial. Upon information and belief, AHL Funding's actions were authorized, ratified and/or approved by its officers and/or managing agents.

### EIGHTH CAUSE OF ACTION
**Intentional Interference with Prospective Economic Relations**
**(Against All Defendants)**

114.    InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

115.    InstaMortgage had an expectancy in continuing advantageous economic relationships with its current and prospective customers.

116.    These relationships contained the high probability of future economic benefits to InstaMortgage.

117.    As alleged in detail above, AHL Funding was aware of and facilitated Lozoya in misappropriating InstaMortgage's trade secrets. This act was also in direct contravention of the Employment Agreement and was an independently wrongful act for which InstaMortgage seeks separate redress herein.

118.    Had the Defendants refrained from engaging in the unlawful and wrongful conduct described herein, there is a near certain probability that InstaMortgage's current and prospective customers would have entered into continued, renewed and/or expanded economic relationships with InstaMortgage rather than AHL Funding's competitive business.

119.    AHL Funding was aware of these relationships with existing and potential customers and intentionally intended to interfere and disrupted these relationships through its unlawful actions, including wrongfully diverting InstaMortgage's customers to AHL Funding's competitive business.

120.    AHL Funding knew that its misconduct would cause InstaMortgage to lose the current and prospective business and engaged in such misconduct with the purpose of causing this loss.

121.    Defendants did intend to interfere with InstaMortgage's ongoing relationships with current and prospective customers, and directed those customers to their own, directly competing business by lying to the customers and misrepresenting InstaMortgage's continued existence and viability.

122.    Defendants' interference with InstaMortgage's customer relationships was intentional because Defendants were fully aware of them and took active steps to interfere with them.

123.    As a result of the Defendants purposeful actions, InstaMortgage has suffered and continues to suffer damages in the form of monetary losses.

124.    As a consequence, and proximate result of the tortious interference by the Defendants of InstaMortgage's prospective future economic relationships, InstaMortgage has lost the benefit of anticipated future business at its normal profit margins, all in an amount to be proved at trial.

125.    Upon information and belief, the acts of the Defendants were willful and malicious, and done with a wanton disregard for InstaMortgage's rights, such that InstaMortgage has suffered oppression and lost customers of which Defendants were well aware. InstaMortgage is therefore entitled to punitive damages, in an amount to be proved at trial.

<u>**NINTH CAUSE OF ACTION**</u>
**Negligent Interference with Prospective Economic Relations**
**(Against All Defendants)**

126.    InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

127.    Defendants negligently interfered with a relationship between InstaMortgage and current and prospective customers that probably would have resulted in an economic benefit to InstaMortgage.

128.    InstaMortgage and current and prospective customers were in an economic relationship that probably would have resulted in a future economic benefit to InstaMortgage.

129.    Defendants knew or should have known of these relationships.

130.    Defendants knew or should have known that these relationships would be disrupted if Defendants failed to act with reasonable care.

131.    Defendants failed to act with reasonable care and engaged in wrongful conduct through their tortious interference resulting in disruption of InstaMortgage's relationships and opportunities set forth in greater detail above.

132.     InstaMortgage was harmed and Defendants' wrongful conduct was a substantial

factor in causing InstaMortgage harm.

133.     As a further direct and proximate result of the Defendants' actions, InstaMortgage

was damaged in further sums in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**
**Breach of Contract**
**(Against Defendant Lozoya)**

134.     InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

135.     Lozoya entered into an Employment Agreement with InstaMortgage, as

consideration for continued employment with InstaMortgage. InstaMortgage has satisfied all of

its obligations under the Lozoya Agreement.

136.     Under the terms of the Employment Agreement, Lozoya acknowledged that she

would not engage in or provide similar or related services for other persons, firms, companies, or

corporations, or engage in any other business in any other business activity that would interfere

with the performance of Loan Officer's duties. Notwithstanding this provision, while still in

InstaMortgage's employ, Lozoya diverted potential clients and clients in violation of the

Employment Agreement. See, Paragraph ¶ 20.

137.     Further, as part of the Employment Agreement, Lozoya agreed that all work

product created in the course of her employment with InstaMortgage and all rights in and to

copyrights, trade secrets, trademarks, patents, and other intellectual property rights arising from

such work product are the sole and exclusive possession of InstaMortgage. See, Paragraph ¶ 21.

138.     Lozoya breached her obligation under the Employment Agreement with

InstaMortgage that imposes duties of confidentiality on InstaMortgage's employees by, among

other things, exporting InstaMortgage's confidential and proprietary information to personal files

and disclosing InstaMortgage's confidential and proprietary information to AHL Funding, a

direct competitor of InstaMortgage, without legal justification or excuse.

139.   By engaging in the misconduct and other wrongful acts set forth above, Lozoya has materially breached her agreement with InstaMortgage.

140.   As a proximate result of Lozoya breaching her contractual obligations, InstaMortgage has suffered and continues to suffer damages in the form of monetary losses.

**ELEVENTH CAUSE OF ACTION**
**Unfair Competition in Violation of California Business**
**and Professions Code Section 17200, *et seq.***
**(Against All Defendants)**

141.   InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

142.   InstaMortgage brings this action pursuant to §17200 *et. seq.* of the Bus. & Prof. Code, the Unfair Competition Act (the "UCL").

143.   InstaMortgage brings this claim pursuant to *Bus. & Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." InstaMortgage seeks compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. InstaMortgage suffered injury, damages in fact and out of pocket loss due to Defendants' unlawful, unfair, unconscionable, deceptive, conduct and practices, as described above and below.

144.   Defendants' conduct, as described above and below, has been and continues to be detrimental to InstaMortgage who is seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5.*

145.   Defendants' acts, as alleged herein, including but not limited to their improper solicitation of InstaMortgage's borrowers, breach of fiduciary obligations and duty of loyalty, conversion of confidential information, and misappropriation of confidential and proprietary information, constitute unfair, unlawful, or fraudulent business practices in violation of *Business and Professions Code §17200 et. seq.* Such acts and violations have not abated and will continue to occur unless enjoined. Defendants' acts and practices described herein offend established

public policies, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

146.    Defendants conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California. As such, the UCL applies to all such transactions and dealings.

147.    The unfair business practices set forth above have and continue to injure InstaMortgage and cause damages in fact and the loss of money, as described further within. These violations have unjustly enriched the Defendants at the expense of InstaMortgage. As a result, InstaMortgage is entitled to injunctive relief, restitution, and other equitable relief.

148.    By reason of the foregoing, InstaMortgage is entitled to recover from the Defendants restitution, complete refunds of all fees paid, disgorgement of revenues and profits obtained from unlawful practices, recission, unpaid expenditures, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## TWELTH CAUSE OF ACTION
### Violation of the Lanham Act, 15 U.S.C. 1125(a)
### (against all Defendants)

149.    InstaMortgage incorporates all previous paragraphs as if fully set forth herein.

150.    Defendant Lozoya made material misrepresentations to numerous consumers that the consumers were engaging in transactions with InstaMortgage, and that InstaMortgage would maintain their confidential information and originate, process and close their transactions.

151.    Defendant Lozoya held herself out to the public as an agent of and licensed with InstaMortgage and customers believed they were dealing with a licensed loan originator of InstaMortgage

152.    Defendant Lozoya also misrepresented to consumers and potential consumers that they were engaging in transactions with representatives and agents of InstaMortgage, while they were actually working on behalf of AHL.

153.    Unbeknownst to InstaMortgage's customers, Lozoya was originating, processing, underwriting, approving, pricing, and funding consumer loans with the intention of diverting them – and in fact, did so divert them – to AHL, an InstaMortgage competitor.

154.    Customers provided information to Lozoya with the intent and belief that such information would be maintained in confidence with InstaMortgage when in fact Lozoya had every intention of sharing that information, without the consumer's knowledge or consent, with AHL.

155.    Lozoya's actions in concert with AHL caused actual consumer confusion as to which entity they were dealing with when seeking financing for a residential mortgage loan.

156.    Defendants Lozoya and AHL have been unjustly enriched as a direct and proximate result of their wrongful acts, and InstaMortgage has suffered damages in an amount not yet fully determined.

157.    As a direct result of the Defendant Lozoya's actions, InstaMortgage has been harmed and continues to be irreparably harmed by the loss of business and goodwill in the marketplace and consumers harmed through the Individual Defendants' material misrepresentations.

158.    The foregoing acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

159.    Defendant Lozoya has acted knowingly, willfully, and in conscious disregard of the rights of their consumers, InstaMortgage, and the general public.

## PRAYER FOR RELIEF

**WHEREFORE**, as to all counts and Defendants, InstaMortgage respectfully requests that the Court enter judgment in its favor and award the following relief against Defendants:

A. That the Court issue a preliminary and permanent injunction ordering the return of InstaMortgage's confidential, proprietary, and trade secret information, requiring removal and/or destruction of any and all of InstaMortgage's confidential, proprietary, and trade secret information in the possession, custody or control of Defendants, and enjoining Defendants, their successors, officers, agents, and employees, and anyone acting in concert with or at their behest, from further breaching their agreements with InstaMortgage and/or further accessing or using this information in any way and from any further misappropriation of InstaMortgage's confidential, proprietary, and trade secret information;

B. For a constructive trust over InstaMortgage's trade secrets, Defendants' profits and any other benefit Defendants have gained or derived through the misappropriation and use of InstaMortgage's trade secrets and Confidential Information;

C. For an order pursuant to *California Business and Professions Code section 17203* and other unfair competition laws and/or consumer protection laws of California enjoining Defendants from engaging in the wrongful practices alleged in this Complaint;

D. For judgment against Defendants ordering, it to restore to Plaintiff all amounts which may have been acquired by means of any practices found by the Court to be contrary to the provisions of *California Business and Professions Code sections 17200, et seq.* and other applicable laws;

E. For judgment against Defendants ordering, it to disgorge its unlawfully obtained revenues, which may have been acquired by means of practices found by this Court to

be contrary to the provisions of *California Business and Professions Code sections 17200, et seq.* and under other applicable laws;

F.   That InstaMortgage be awarded its actual and consequential damages according to proof at trial;

G.  That InstaMortgage be awarded prejudgment interest to the fullest extent available under applicable law;

H.  That InstaMortgage be awarded Defendants' unjust enrichment and restitution to the fullest extent available under applicable law;

I.   That InstaMortgage be awarded reasonable royalties to the fullest extent available under applicable law;

J.   That InstaMortgage be awarded punitive, enhanced, and/or exemplary damages, including but not limited to doubled damages and unjust enrichment under Cal. Civ. Code Section 3426, to the fullest extent available under applicable law;

K.  That InstaMortgage be awarded reasonable attorneys' fees and costs to the fullest extent available under applicable law;

L.   That InstaMortgage be awarded such other injunctive and provisional remedies, as appropriate, as well as an accounting to the fullest extent available under applicable law; and

M.  That InstaMortgage be granted such other and further relief as the Court deems just and proper.

### **Demand for Jury Trial**

InstaMortgage respectfully requests and demands a jury trial on all issues so triable.

Respectfully submitted,

/s/

Arielle Stephenson, Esq.

Ari Karen, Esq. (*pro hac vice forthcoming*)

Rachel S. Trauner, Esq. (*pro hac vice forthcoming*)
Mitchell Sandler
1120 20th Street, NW, Suite 725
Washington, DC 20036
202.886.5267
astephenson@mitchellsandler.com
akaren@mitchellsandler.com
rtrauner@mitchellsandler.com


*Attorneys for Plaintiff*
*InstaMortgage f/k/a Arcus Lending, Inc.*